Matter of Abramson v Hasson (2020 NY Slip Op 03418)





Matter of Abramson v Hasson


2020 NY Slip Op 03418


Decided on June 17, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 17, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


2019-01272
 (Docket Nos. F-6020-14/18C, F-6761-14/18C)

[*1]In the Matter of Alison Abramson, appellant,
v
Matthew Hasson, respondent.


Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, White Plains, NY (Robert A. Spolzino of counsel), for appellant.
Buonamici & LaRaus, LLP, White Plains, NY (Lawrence B. LaRaus of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 4, the mother appeals from an amended order of the Family Court, Westchester County (Arlene Gordon-Oliver, J.), dated January 9, 2019. The amended order denied the mother's objections to an order of the same court (Esther R. Furman, S.M.) dated October 17, 2018, which denied the mother's motion for summary judgment determining the meaning of the term "gross earned income" in the parties' stipulation of settlement, which was incorporated but not merged into their judgment of divorce, and granted the father's cross motion for summary judgment determining the same issue.
ORDERED that the amended order dated January 9, 2019, is modified, on the law, by deleting the provision thereof denying the mother's objections to so much of the order dated October 17, 2018, as granted the father's cross motion for summary judgment, and substituting therefor a provision granting those objections; as so modified, the amended order dated January 9, 2019, is affirmed, without costs or disbursements, the father's cross motion for summary judgment is denied, the order dated October 17, 2018, is modified accordingly, and the matter is remitted to the Family Court, Westchester County, for a hearing to determine the parties' intent in defining "income" as "gross earned income" in the context of their stipulation.
The mother and the father have two children together. On October 31, 2013, the parties entered into a stipulation of settlement, which was incorporated but not merged into their judgment of divorce dated December 10, 2013. The stipulation provided that the father would pay child support to the mother and that beginning May 1, 2014, "the parties shall set by April 30, a payment schedule of the Parent's total obligation for base child support' made pursuant to the formula set forth below and income caps for the fiscal year beginning May 1 and continuing through April 30th of the following year. This schedule shall be based on the actual income' for the previous calendar year. The Father shall then pay this base child support' amount to the Mother in monthly installments." For the purpose of computing base child support, the stipulation defined "income" as "the gross earned income solely attributable to a party and as listed on the Form 1040 United States Individual Income Tax Return filed by the parties, less (1) FICA taxes actually paid; (2) Medicare taxes actually paid; less (3) New York City or Yonkers income or earnings taxes actually paid."
In 2016, the mother received a salary of $86,801 for her work as a veterinarian. She also received $39,631 in "[o]rdinary dividends" and $245,629 in "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc.," from two limited liability companies (hereinafter LLCs) in which she had an ownership interest. In 2017, the father calculated his base child support obligation using the mother's adjusted gross income of $369,092. The mother disputed the calculation, contending that the income derived from her ownership interest in the LLCs was not "earned" income and therefore did not fall under the stipulation's definition of "income."
On May 22, 2018, the mother filed a petition to enforce the child support provisions of the stipulation, alleging that the father failed to comply with his child support obligation as calculated by the mother. The mother then moved for summary judgment determining the meaning of "gross earned income" in the stipulation. She argued that the term "gross earned income" unambiguously excluded all passive income, including the distributions she received from the LLCs because that income was not "earned." The father opposed the motion and cross-moved for summary judgment determining the meaning of "gross earned income," arguing that it unambiguously included the distributions the mother received from the LLCs.
In an order dated October 17, 2018, the Support Magistrate determined that, if the parties intended to calculate child support obligations "based only upon income generated by employment or payment for work/services and to exclude their passive income, it would have been incumbent upon the parties to expressly so state in their Stipulation." Accordingly, the Support Magistrate deferred to the definition of "income" in the Child Support Standards Act (hereinafter CSSA), which is gross income that was or should have been reported on the most recent tax return (see Family Ct Act § 413[1][b][5][i]), denied the mother's motion, and granted the father's cross motion. The mother filed objections to the Support Magistrate's order, arguing that, as a matter of law, "gross earned income" excluded passive income. The Family Court denied the mother's objections. The mother appeals.
"A stipulation of settlement entered into by parties to a divorce proceeding constitutes a contract between them subject to the principles of contract interpretation" (Toscano v Toscano, 153 AD3d 1440, 1442; see Rainbow v Swisher, 72 NY2d 106, 109; Ayers v Ayers, 92 AD3d 623, 624). "Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used" (Toscano v Toscano, 153 AD3d at 1442). "A court may not write into a contract conditions the parties did not insert or, under the guise of construction, add or excise terms, and it may not construe the language in such a way as would distort the apparent meaning" (Ayers v Ayers, 92 AD3d at 624). "Whether a writing is ambiguous is a matter of law for the court, and the proper inquiry is whether the agreement on its face is reasonably susceptible of more than one interpretation" (id. at 625 [internal quotation marks omitted]). In making this determination, the court also should examine the entire contract and consider the relation of the parties and the circumstances under which the contract was executed (see id.). Where a contract is ambiguous, "the court may consider the construction placed on the contract by the parties to help ascertain the meaning" (Argento v Argento, 304 AD2d 684, 685). "The role of the court is to determine the intent and purpose of the stipulation based on the examination of the record as a whole" (id. at 685).
Here, the term "gross earned income," in the context of the parties' stipulation, is ambiguous (see id.). However, instead of deferring to the CSSA's definition of "income," the Support Magistrate should have held a hearing to determine the parties' intent in including the word "earned" (see Gentile v Gentile, 31 AD3d 1158, 1159; Matter of Dube v Horowitz, 258 AD2d 724, 725-726). Each party argues that there is no ambiguity, but each party defines the relevant terms differently.
Accordingly, we remit the matter to the Family Court, Westchester County, for a hearing to determine the parties' intent in defining "income" as "gross earned income" in the context of their stipulation.
AUSTIN, J.P., DUFFY, BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court