■ In the Matter of LESLIE MILLER, Appellant, v BRIAN FITZPATRICK, Respondent. [47 NYS3d 378]—

Appeal by the mother from an order of the Family Court, Suffolk County (Martha L. Luft, J.), dated November 24, 2015. The order, insofar as appealed from, denied the mother's objections to stated portions of an order of that court (Barbara Lynaugh, S.M.), dated September 22, 2015, which, inter alia, after a hearing, assessed the father's child support obligations following the sale of the marital residence at only $5,076.29

per month for the period beginning on December 17, 2014, and ending on April 30, 2015, awarded the father a dollar for dollar credit of $1,100 per month against the child support payable with respect to the parties' oldest child, imputed income to the mother in the amount of $51,236.75 for the year 2014, denied the mother's request for child support arrears, and denied the mother's request for an attorney's fee.

Ordered that the order dated November 24, 2015, is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, with costs, the mother's objections to so much of the order dated September 22, 2015, as assessed the father's child support obligations following the sale of the marital residence at $5,076.29 per month for the period beginning on December 17, 2014, and ending on April 30, 2015, awarded the father a dollar for dollar credit of $1,100 per month against the child support payable with respect to the parties' oldest child, imputed income to the mother in the amount of $51,236.75 for the year 2014, denied her request for child support arrears, and denied her request for an attorney's fee are granted, those portions of the order dated September 22, 2015, are vacated, and the matter is remitted to the Family Court, Suffolk County, for a hearing and, thereafter, a new determination in accordance herewith of the amount of the father's child support obligations, the amount of the father's credit against the child support payable with respect to the parties' oldest child, the mother's imputed income for the year 2014, the mother's request for child support arrears, and the mother's request for an attorney's fee.

The parties, who have four children together, entered into a separation agreement dated April 20, 2012, which was incorporated but not merged into their subsequent judgment of divorce. In relevant part, the agreement provided that, upon the sale of the marital home, the father would pay "the full amount of child support required by the [Child Support Standards Act] Guidelines," and that the father's "obligation to pay the sum as calculated in accordance with the Guidelines shall commence on the date of the sale of the marital home."

The marital home was sold on December 17, 2014. Relying on the above-quoted provision, the mother petitioned the Support Magistrate, inter alia, to calculate the father's child support obligation, pursuant to the Child Support Standards Act Guidelines, using his 2013 income. Instead, the Support Magistrate relied on a calculation made in 2012, when the separation agreement was first entered into. This was error.

A stipulation of settlement entered into by parties to a

divorce proceeding constitutes a contract between them subject to the principles of contract interpretation (*see Ayers v Ayers*, 92 AD3d 623, 624 [2012]; *De Luca v De Luca*, 300 AD2d 342 [2002]). Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used (*see Slatt v Slatt*, 64 NY2d 966, 967 [1985]; *Ayers v Ayers*, 92 AD3d at 624). "A court may not write into a contract conditions the parties did not insert by adding or excising terms under the guise of construction, and it may not construe the language in such a way as would distort the contract's apparent meaning" (*Cohen-Davidson v Davidson*, 291 AD2d 474, 475 [2002]; *see Matter of Scalabrini v Scalabrini*, 242 AD2d 725, 726 [1997]).

Here, there is nothing in the separation agreement to support the father's contention that, upon the sale of the marital home, he would be required only to pay child support based on the income he was earning at the time the agreement was entered into. To the contrary, the agreement provides that the father's obligation to pay child support "calculated in accordance with the [Child Support Standards Act] Guidelines shall commence on the date of the sale of the marital home." As the marital home was sold in December of 2014, the necessary calculation should have been based on the father's "most recent federal income tax return" (Family Ct Act § 413 [1] [b] [5] [i]).

Moreover, the Support Magistrate erred in awarding the father a dollar for dollar credit in the full amount of $1,100 against his monthly child support payments. It is undisputed that the credit in question, which had previously been awarded by the Supreme Court, Westchester County, in an order dated December 9, 2013, was intended to apply only to the child support attributable to the parties' oldest child, and only to the extent necessary to reflect payments made toward the cost of the child's room and board while the child was away at school. Indeed, a noncustodial parent who is paying child support and is contributing to a child's educational expenses is entitled to a credit for the amounts contributed to educational expenses during periods when the child lives away from home; however, the parent is only entitled to a credit for those expenses associated with the child's room and board (*see Ayers v Ayers*, 92 AD3d at 625; *Matter of Levy v Levy*, 52 AD3d 717, 718 [2008]; *Lincer v Lincer*, 30 AD3d 381, 382 [2006]; *Navin v Navin*, 22 AD3d 474, 476 [2005]; *Imhof v Imhof*, 259 AD2d 666, 667 [1999]).

Here, the evidence presented before the Support Magistrate established that only 46% of the father's monthly contribution

to the child's expenses related to the cost of room and board. Thus, the credit awarded by the Support Magistrate should have been limited to 46% of $1,100, and should have been applied only against that child's share of child support.

Moreover, in adjusting the amount of child support owed by the father for the period beginning after May 1, 2015, the Support Magistrate was required, by the terms of the parties' separation agreement, to use the parties' federal and state income tax returns for the previous tax year as a basis for the calculation. As the mother had not yet filed her 2014 tax return at that time, the Support Magistrate imputed income to her in the amount of $51,236.75, based on the fact that she would be receiving that amount in maintenance payments during the 2015 calendar year. The record evidence shows, however, that the mother did not begin receiving maintenance payments until after the sale of the marital residence in December 2014. Thus, there is no record support for the Support Magistrate's imputation of $51,236.75 to the mother in "maintenance" income for the year 2014.

Because the above-noted errors require adjustments in the calculation and crediting of the father's child support payments, the Family Court must also calculate the amount of arrears owed to the mother.

Finally, the Support Magistrate denied the mother's request for an attorney's fee based upon her determination that the mother's commencement of this proceeding was unnecessary because the father had been "overpaying his obligation." However, in light of our determination that the father owes child support arrears, the Family Court must also make a new determination of the mother's request for an attorney's fee (*see Matter of Nieves-Ford v Gordon*, 47 AD3d 936, 937 [2008]). Rivera, J.P., Dillon, Chambers and Hinds-Radix, JJ., concur.